UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

PETTY OFFENSE NO. 0:23-MJ-02-EBA

VIOLATION NO. 1062808

UNITED STATES OF AMERICA,     PLAINTIFF,

V.     **MEMORANDUM OPINION & ORDER**

HEATHER WARMAN,     DEFENDANT.

*** *** *** ***

### INTRODUCTION

Defendant Heather Warman is a self-attested "CEO," "Owner," "Representative," and "Manager" of SUP Kentucky.[1] [R. 7 at pg. 4]. On its website, SUP Kentucky advertises kayak rentals and tours on-site at Grayson Grotto, which is situated on Grayson Lake in Olive, Kentucky. [R. 6-1 at pg. 3].[2] Critically, Grayson Lake is federal property, so a commercial business license issued by the United States Army Corps of Engineers (USACE) is required to lawfully solicit or conduct business on the lake. *See* 36 C.F.R. § 327.18(a). Warman was advised of the requirement multiple times over the course of several months by USACE Project and Resource Manager Francis Jeffrey. Nonetheless, she never applied for a commercial business license nor ceased her

---

[1] When interacting with USACE Project and Resource Manager Francis Jeffrey, Warman introduced herself as the "owner" and "CEO" of SUP Kentucky. But on cross-examination, Warman said that she doesn't own SUP Kentucky or serve as its CEO, but instead serves as a "Manager" who holds herself out as a "Representative" of SUP Kentucky.
[2] [Gov. Ex. 6; R. 6-1 at pg. 3] ("All Stand Up Paddle Kentucky adventures *meet on-site* where your trip will take place. . . . To help you plan your travels: . . . *Grayson Grotto* is in Grayson Lake State Park in Olive Hill, Kentucky.") (emphasis added).

operations on the lake. So, on July 23, 2022, Warman was issued a notice for violating 36 C.F.R. § 327.18(a).³ [R. 1].

Warman appeared before the Court on February 23, 2023 for her initial appearance and arraignment. [R. 3]. Warman pled not guilty to the violation. [*Id.*]. Thereafter, the Court heard testimony from Jeffrey and Warman. After the taking of proof, the Court directed the parties to submit briefing on the matter no later than March 2, 2023. [*Id.*]. The United States and Warman tendered their briefs, so the matter is ripe for adjudication. [R. 6; R. 7].

ANALYSIS

A

The United States accuses Warman of engaging in or soliciting business activities on Grayson Lake without authorization from the USACE in violation of 36 C.F.R. § 327.18(a). The regulation prohibits the "engaging in or solicitation of business on project land or waters without the express written permission of the District Commander." *Id.* A violator "may be punished by a fine of not more than $5,000 or imprisonment for not more than six months or both[.]" 36 C.F.R. § 327.25. For Warman to be adjudged guilty by this Court, the United States must show beyond a reasonable doubt that Warman knowingly engaged in or solicited business on federal project land or waters, such as Grayson Lake, without the express written permission of the District Commander.

B

On March 28, 2022, Warman called Jeffrey to inquire about expanding certain mountain bike trails onto federal project land surrounding Grayson Lake. [Gov. Ex. 1 at pg. 1]. These bike

---

³ The notice was served on Warman via USPS Certified Mail at 2478 Glen Cairn Road, Roger, Kentucky 41365. Jeffrey obtained this address directly from SUP Kentucky's website, and Warman obviously received the notice given her participation in this action.

trails were associated with her business, Grayson Getaways. During the conversation, Warman advised Jeffrey that she was also "the owner and CEO of SUP Kentucky, a guided kayak company" which seeks to expand its operations "on Grayson Lake[.]" [*Id.*]. Jeffrey informed Warman that it is illegal to operate a commercial business on federal project lands or waters without express consent from the District Commander in the form of a written permit. [*Id.*]. Warman, however, contended that a permit from the District Commander was unnecessary because she already held a permit from the Commonwealth of Kentucky which allowed her to operate a guided kayak business on "any lake in the state."[4] [*Id.*]. Jeffrey assured Warman, though, that she needed a permit from the District Commander and explained to her the difference between federal and state lands. [*Id.*].

On May 13, 2022, Warman again contacted Jeffrey about expanding Grayson Getaways' bike trails onto federal project land surrounding Grayson Lake. [*Id.*]. During the conversation, Jeffrey "reminded her . . . that a permit is needed to continue" her kayak rental and touring operations on Grayson Lake. [*Id.*]. This constituted her second verbal warning. Once again, Warman "disagreed." [*Id.*].

Five days later, on May 17, 2022, the USACE's Real Estate Division served a cease-and-desist letter on Warman. [*Id.*]; [Gov. Ex. 2]. The letter advised Warman that she was in violation of 36 C.F.R. § 327.18 for "advertising for and performing guided kayak and standup paddleboard tours on Grayson Lake . . . without the expressed written permission of the District Commander[.]" [*Id.*]. Warman acknowledged receipt via email, writing "Thank You." [Gov. Ex. 1 at pg. 1].

Thereafter, Warman communicated with the USACE's Real Estate Division concerning the permit requirements. [*Id.*] An in-person meeting was scheduled for May 27, 2022, but was later

---

[4] This alleged permit was never presented to Jeffrey, or anyone else with the USACE, nor was it offered as evidence at trial.

cancelled. [*Id.*]. On May 27, 2022, Jeffrey was contacted by Warman's attorney about the permit requirements and application process. [*Id.* at pg. 2].

On July 5, 2022, the USACE's Real Estate Division informed Jeffrey that Warman's company continued to operate and advertise tours on Grayson Lake. [*Id.*]. After investigating, Jeffrey concluded that Warman was, in fact, engaging in or soliciting business on project lands without a permit, in violation of 36 C.F.R. § 327.18(a).[5] [*Id.*]. So, Jeffrey and Natural Resource Specialist Justine Smith cited Warman for violating the regulation. [*Id.*]. On September 7, 2022, Jeffrey chronicled his investigation into a Memorandum for Record, which the United States offered as an exhibit at trial. [*Id.*].

C

Warman's defense is two-fold. *First*, she says she doesn't "own" SUP Kentucky, so she argues it's impossible for her to have operated a business on federal project lands or waters without a permit in violation of 36 C.F.R. § 327.18(a). [R. 6 at pg. 2] ("Warman did not and has not ever owned the Web-Site presented as evidence by the United States of America and as detailed on the Kentucky Secretary of State official records Mrs. Warman does not and has never owned Sup Kentucky.").[6] *Second*, because the citation was issued on July 23, 2022—when she was out of the country, at sea, on her way to Grenada—it was impossible for her to "solicit business or even communicate with anyone other than those physically on board her ship." [*Id.*].

Warman's first defense calls for the Court to make a credibility determination. *See United States v. Vance*, 956 F.3d 846, 853 (6th Cir. 2020) (explaining that during a bench trial, where the

---

[5] Jeffrey's investigation included soliciting a guided kayak tour on Grayson Lake from SUP Kentucky.
[6] Warman asserted at trial and in her trial brief that the Kentucky Secretary of State's official business registry proves that she's not an owner of SUP Kentucky. [R. 6 at pg. 2]. However, Warman never offered these records into evidence for the Court's consideration. So, her claim is without factual support.

district court sits as "the finder of fact," the district court "is best placed to determine witness credibility"). Is Jeffrey or Warman's account of the facts most credible?

Jeffrey, as discussed above, documented his interactions with Warman on numerous occasions spanning a period of several months.[7] During these interactions, Warman held herself out as the owner and/or CEO of SUP Kentucky (and admitted that SUP Kentucky was conducting and soliciting business on Grayson Lake). [Gov. Ex. 1 at pg. 1] (noting that Jeffrey explained orally, at least twice, that "she could not continue to guide on Grayson until a permit is issued," but that Warman "disagreed"). During trial, however, Warman claimed that she never represented to Jeffrey that she owned, operated, or served as CEO of SUP Kentucky.[8] Yet, Warman testified to holding herself out as a "Representative" of SUP Kentucky, that she serves as a "Manager" for SUP Kentucky, and that her husband owns SUP Kentucky. This aligns with her tendency to use personal possessive pronouns on the stand when referring to SUP Kentucky, such as "we" and "our." Given Warman's admissions, Jeffrey's detailed chronology of his conversations with Warman, and the fact that only Jeffrey's account has evidentiary support, the Court concludes that Jeffrey's account of the facts is inherently more credible than Warman's. So, Warman's defense that it was impossible for her to violate 36 C.F.R. § 327.18(a) for lack of an ownership interest in SUP Kentucky is unavailing.[9]

Warman's second defense asserts a conclusion of law without reference to any legal authority: that it was legally impossible for Warman to solicit business from a website while at sea

---

[7] Warman, on the other hand, did not.
[8] In a footnote, the United States suggests that Warman's testimony that she "never informed Resource Manager Francis Jeffrey, the Real Estate Division of the USACE, or her SUP Kentucky clientele that she owned this company or that she represented she was one of the owners of the company" might constitute "perjury and obstruction of justice." [R. 7 at pg. 7 n.1]. The United States bases its claim off a statement located on the SUP Kentucky website. [*Id.*]. The USACE is investigating the matter.
[9] Again, Warman's reliance on evidence *outside* the record—the Kentucky Secretary of State's official business registry—to argue that she's not an owner of SUP Kentucky fails to rebut evidence *within* the record that indicates the opposite. *See*, *supra* note 6.

without access to the internet. [R. 6 at pg. 2]. Yet, Jeffrey testified that he issued a citation for Warman because of her *ongoing*, *continuous* wrongful conduct—conduct that Jeffrey first became aware of by Warman's voluntary admission, no less. [Gov. Ex. 1 at pg. 1]. It is a coincidence, at best, that Warman happened to be out of the country on the date that Jeffrey and Smith wrote Warman's citation. This "defense" would be unavailable if Jeffrey or Smith wrote Warman's citation on any one of the other 116 days that Warman unlawfully solicited and conducted business on Grayson Lake without permission. And it is illogical to argue that Warman's travel to another country, alone, precludes her from using a website to passively solicit business.

Although neither of Warman's defenses persuade the Court, the United States must still carry its burden of proving beyond a reasonable doubt that Warman violated 36 C.F.R. § 327.18(a). Here, the United States did so.

Through the testimony of Jeffrey, the United States proved that Warman is interested in the success of SUP Kentucky.[10] *See* [Gov. Ex. 1 at pg. 1]. Also through the testimony of Jeffrey, and implicitly through the testimony of Warman herself, the United States proved that Warman solicited and conducted guided kayak and standup paddle tours on Grayson Lake without a commercial business license. *See* [*Id.*]; [Gov. Ex. 6; R. 6-1 at pg. 3] ("All Stand Up Paddle Kentucky adventures *meet on-site where your trip will take place*. . . . To help you plan your travels: . . . Grayson Grotto is in Grayson Lake State Park in Olive Hill, Kentucky.") (emphasis added).

Finally, also through the testimony of Jeffrey and Warman, the United States proved that Warman conducted these activities knowingly. *See United States v. Davis*, 339 F.3d 1223, 1228

---

[10] Warman's precise title seems to be something that not even she can discern. *See supra* note 1 (highlighting that Warman has held herself out as the "CEO," "Owner," "Manager," and "Representative" of SUP Kentucky at various times to different target audiences).

Page **6** of **8**

(10th Cir. 2003) (holding that receiving "verbal warnings and correspondence from the Corps of Engineers . . . make clear that [Defendant] had actual knowledge of the regulations and that lake management officials considered his actions to be illegal"). Warman was orally warned by Jeffrey *twice* that she would need to obtain a commercial business license before operating or soliciting business on Grayson Lake and, when she failed to comply with Jeffrey's oral warnings, Warman was warned *again* in writing by the USACE's Real Estate Division that she was in violation of 36 C.F.R § 327.18(a). [Gov. Ex. 1 at pg. 1]. Warman is guilty beyond any reasonable doubt.[11]

CONCLUSION

Heather Warman was cited with violating 36 C.F.R. § 327.18(a) for soliciting for and operating her guided tour and kayak rental business on Grayson Lake without written permission from the District Commander. Warman pled not guilty. However, the Court concludes beyond a reasonable doubt that Warman violated 36 C.F.R. § 327.18(a). That is, she knowingly engaged in or solicited business on Grayson Lake without the express written permission of the District Commander, despite receiving two prior oral warnings and a formal, written cease-and-desist letter. Therefore,

IT IS ORDERED AND ADJUDGED that Heather Warman is GUILTY of violating 36 C.F.R. § 327.18(a).

IT IS FURTHER ORDERED that Heather Warman shall appear for SENTENCING on April 13, 2023 at 10:00 A.M. in the United States District Courthouse at Ashland, Kentucky. On

---

[11] It's unclear from the record what type of business association SUP Kentucky is. However, even if SUP Kentucky is a Limited Liability Corporation—the most protective of business associations—"under Kentucky law, a member or manager of a LLC can be held personally liable for [her] own wrongful acts or misconduct even if [she] was acting on behalf of the LLC." *5ifth Element Creative, LLC v. Kirsch*, No. 5:10-cv-255-KKC, 2010 WL 5139235, at *2 (E.D Ky. Dec. 9, 2010); Ky. Rev. Stat. Ann. § 275.150(3); *see also* 4A Ky. Prac. Methods of Prac. § 18.33 (Nov. 2022) ("In fact, KRS 275.150(3) specifically provides that KRS 275.150(1) shall not affect the liability of a member, manager, employee, or agent of a limited liability company for his or her own negligence, wrongful acts, or misconduct."). Warman never made this argument at trial or in briefing. But even if Warman had advanced such an argument, she remains liable for her wrongful—criminal—acts.

or before Monday, April 10, 2023, the parties shall file memoranda presenting matters that should be considered by the court in calculating an appropriate sentence.

    Signed March 15, 2023.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge